**UNITED STATES of America,**

v.

**Anthony George BATTLE.**

**No. 1:95–CR–528–ODE.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Sept. 22, 2003.

William H. McKinnon, Assistant United States Attorney, Atlanta, GA, for United States.

Margaret O'Donnell, McNally & O'Donnell, P.S.C., Frankfort, KY, P. Bruce Kirwan, Atlanta, GA, for Defendant.

*ORDER*

ORINDA D. EVANS, Chief Judge.

This federal death penalty case is before the Court on Defendant Battle's application for certificate of appealability. Defendant seeks to appeal the Court's Order of April 30, 2003, denying his motion brought under 28 U.S.C. § 2255 as well as other rulings made during the course of the § 2255 proceedings.

Under 28 U.S.C. § 2253(c), an appeal may not be taken from a final order in a proceeding under § 2255 unless a certificate of appealability has issued from a circuit justice or judge. A certificate of appealability may issue only "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The certificate must indicate which issue or issues satisfy the required showing.

█ The meaning of the phrase "a substantial showing of the denial of a constitutional right" has been interpreted by the United States Supreme Court. In *Slack v. McDaniel,* 529 U.S. 473, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000), the Court held:

Under AEDPA, a COA may not issue unless "the applicant has made a sub-

stantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c) (1994 ed., Supp. III). Except for substituting the word "constitutional" for the word "federal," § 2253 is a codification of the CPC standard announced in *Barefoot v. Estelle,* 463 U.S. [880] at 894[, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983)]. Congress had before it the meaning *Barefoot* had given to the words it selected; and we give the language found in § 2253(c) the meaning ascribed it in *Barefoot,* with due note for the substitution of the word "constitutional." [citation omitted]. To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot,* includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were " 'adequate to deserve encouragement to proceed further.' " *Barefoot,* 463 U.S. at 893, and n. 4, 103 S.Ct. 3383.

*Slack,* 529 U.S. at 483–84, 120 S.Ct. 1595.

In *Miller–El v. Cockrell,* 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003), the Supreme Court further interpreted § 2253. At issue was the appealability of a *Batson*[1] claim in a habeas petition brought under 28 U.S.C. § 2254. *Miller–El* contended the state prosecutor had struck African American jurors based on race. The state trial court had found that *Miller–El* had not proven discriminatory motive. Noting that the state court's finding was entitled to deference under § 2254(d)(2) unless it was objectively unreasonable, the district court adopted the state court's finding and also declined to issue a certificate of appealability. The United States Court of Appeals for the Fifth Circuit affirmed.

In reversing the Fifth Circuit, the Supreme Court emphasized that the restrictive standard of review for state court findings set by § 2254 was not relevant to the question whether to issue a certificate of appealability. Rather, because *Miller–El* had put forward "substantial evidence", *id.,* 123 S.Ct. at 1032, in the state court to support his *Batson* claim, a certificate of appealability should have issued from the federal district judge who ruled on the § 2254 motion. The Court emphasized that "the question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Id.,* 123 S.Ct. at 1042.

While *Miller–El* obviously involved a habeas proceeding under § 2254, the Court sees no reason why its ruling would not apply in a § 2255 proceeding as well. Thus, as to each of Defendant Battle's fact-intensive claims, it will be necessary to determine whether "substantial evidence" was put forward by Defendant in support of each such claim.

In *Miller–El,* the Court also cautioned that in order for the certification requirement to fulfill its function of weeding out frivolous appeals, a court should not automatically issue a certificate of appealability. The applicant must prove " 'something more than the absence of frivolity' " or "the existence of mere 'good faith' on his or her part." *Id.,* 123 S.Ct. at 1040 (quoting *Barefoot,* 463 U.S. at 893, 103 S.Ct. 3383).

While § 2253 does not expressly so state, presumably its drafters did not intend that the applicant make a showing of substantiality as to any contention that the district court erred in evidentiary rulings or case management decisions in the course of the § 2255 proceeding. These matters are not substantive claims per se

---

1. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

but simply are claims of error as to ongoing intermediate rulings during the course of a § 2255 proceeding. Rulings on these matters presumably are reviewable by the appellate court in any event. No certificate of appealability is needed.

The Court now turns to evaluation of each of Defendant's requests for a certificate of appealability ("COA").

For ease of reference, the Court will state Defendant's various requests for certification as designated by Defendant in his application for certificate of appealability ("Application").

A. Anthony Battle's Death Sentence is in Violation of *Ring v. Arizona* and the Federal Death Penalty Act is Unconstitutional

█ Defendant is making four separate arguments as to which he seeks a COA. He is first contending that the Supreme Court held in *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), that aggravating factors in a case where the death penalty is sought must be charged in the indictment; he also argues that *Ring* is retroactive and thus applies to Defendant Battle's case. In the *Ring* case, the Supreme Court did not specifically hold that the aggravating factors had to be set forth in the indictment[2] but the reasoning of the opinion may implicitly suggest such a holding or that such a holding is the next step. Defendant's argument is at least debatable among reasonable jurists.

Regarding the retroactivity of *Ring*, in a case involving the propriety of determination of the death penalty by a judge rather than by a jury, the United States Court of Appeals for the Ninth Circuit recently has held that *Ring* is retroactive. *Summerlin v. Stewart*, 341 F.3d 1082 (9th Cir.2003). The United States Court of Appeals for the Eleventh Circuit has held that *Ring* is not retroactive. *Turner v. Crosby*, 339 F.3d 1247, 1280 (11th Cir.2003). In the event of a split of authority between circuits, an issue is classified as debatable among reasonable jurists. This issue is certified as appealable.

Next, Defendant is arguing that the Federal Death Penalty Act, 18 U.S.C. §§ 3591–3597, is itself unconstitutional because it does not require that aggravating factors be charged in an indictment returned by a grand jury. Instead, the Federal Death Penalty Act requires that aggravating factors must be set forth in a written notice of intent to seek the death penalty which is prepared by the prosecutor. *See* 18 U.S.C. § 3593(a). In light of the implication which may be drawn from the language of *Ring*, this issue is also found to be debatable among jurists of reason and thus is certified as appealable.

█ Finally, Defendant argues that the Federal Death Penalty Act is unconstitutional because it provides that the Federal Rules of Evidence do not apply at a sentencing proceeding under that Act. *See* 18 U.S.C. § 3593(c). In *United States v. Fell*, 217 F.Supp.2d 469 (D.Vt.2002), the district court found the Federal Death Penalty Act unconstitutional for this reason. That case is now pending on appeal in the United States Court of Appeals for the Second Circuit which has not yet issued a ruling. Thus, the issue of the constitutionality of

**2.** *Ring* involved a state prosecution where the trial judge determined the sentence. The Court in *Ring* held that a defendant is entitled to have the penalty determined by a jury, rather than a judge because the aggravating factors were the "functional equivalent" of elements of the offense. As required by the Federal Death Penalty Act, 18 U.S.C. §§ 3591–3597, the aggravating factors in Defendant Battle's case were set forth in a written notice of the prosecution's intent to seek the death penalty, not the indictment. However, the death sentence was returned by the jury.

this portion of the Federal Death Penalty Act is debatable among jurists of reason and it is certified for appeal.

B. Petitioner's Attorneys and the Court Denied Petitioner the Right to Interpose or Reject an Insanity Defense in Violation of the Fifth and Sixth Amendments

■ Initially, the Court notes that this issue as specified by Defendant Battle in his Application differs from that which actually was presented in the § 2255 motion. Battle never contended that he was denied the right to interpose an insanity defense; he did in fact interpose an insanity defense. The issue which the Court considered was whether Defendant's attorneys and the Court denied petitioner the right to reject an insanity defense in violation of the Fifth and Sixth Amendments.

In its April 30, 2003 Order denying Defendant's § 2255 motion ("Order"), the Court found that Defendant Battle consented either expressly or tacitly to an insanity defense. Order at 78–86. This is a fact intensive issue in which the Court considered conflicting evidence in the record. The evidence offered in support of Defendant's claim was contained in the declaration of Stephanie Kearns (Defendant's trial attorney), which was found insufficient to sustain Defendant's burden of proof (a preponderance of the evidence) in light of other evidence in the record and the lack of testimony from Defendant that he did not authorize an insanity defense. Nonetheless, the Court finds that Defendant presented sufficient evidence to warrant the issuance of a COA on the issue whether Defendant was denied the right to reject an insanity defense.

In addition, the Court concluded, *see* Order at 86–93, that Defendant was not deprived of a Fifth or Sixth Amendment right to reject an insanity defense and that even if the insanity defense was presented over his objection, he suffered no prejudice because the evidence would have been presented at the sentencing hearing in any event.[3] The Court finds that a COA should issue on these legal issues as well.

C. Ineffective Assistance of Counsel Related to Investigation, Preparation and Presentation of the Defense

This section of Defendant's Application is broken up into subsections, designated by Defendant as follows:

1. Failure to Investigate and Present a Meaningful Mental Health Case in Mitigation

2. Exclusions of Declarations

 a. Richard Burr

 b. John Pannell

 c. Charles Warren

3. Failure to Perform as Reasonably Competent Counsel in Cases Involving Mental Health Issues and Government Evaluations of the Defendant

4. Failure to Retain a Treating Psychiatrist for Petitioner and to Continue to Seek to Medicate Petitioner

5. Failure to Reasonably and Competently Present Evidence of the Ability of the BOP to Safely Incarcerate Petitioner, Instead of Relying on the Testimony of a Current BOP Employee Who Provided False and Misleading Testimony

6. Failure to Present Evidence of the BOP's Failure to Recognize that Pe-

---

**3.** Indeed, one of Defendant's other arguments in the instant § 2255 proceeding is that trial counsel failed to find as much evidence of psychiatric or psychological impairment as they should have.

titioner was Seriously Mentally Ill and to Properly Incarcerate Him

7. Failure to Call Dr. Rogers in the Defense Case in Chief Which Resulted in the Exclusion of Critical Guilt Phase Testimony

8. Failure to Adequately Investigate Petitioner's 1987 Murder Conviction and Then Challenge and/or Offer Mitigating Evidence about that Conviction

As previously stated, Defendant does not need a certificate of appealability as to this Court's ruling excluding the declaration of Richard Burr and portions of the declarations of John Pannell and Charles Warren from evidence during the § 2255 evidentiary hearing.

The ineffective assistance of counsel claims brought by Defendant derive from the Supreme Court's ruling in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and progeny. In *Strickland* and subsequent cases, the Supreme Court held that an ineffective assistance of counsel claim has two prongs: both must be proven in order to obtain relief. *Atkins v. Singletary,* 965 F.2d 952, 959 (11th Cir.1992) (citing *Strickland,* 466 U.S. at 697, 104 S.Ct. 2052). First, the party seeking relief must show that the assistance offered by his counsel fell below that expected of reasonably competent counsel. In addition, the movant must show that counsel's ineffectiveness caused him actual prejudice. The ineffectiveness must implicate the fundamental fairness of the trial, or the reliability of the outcome of the sentencing proceeding to warrant relief. *Strickland,* 466 U.S. at 696, 104 S.Ct. 2052.

Defendant Battle's claims of ineffective assistance in this court are based on multifaceted claimed failures of trial counsel to: conduct an adequate pretrial investigation; provide available information to the defense experts; make appropriate objections to evidence or other procedures both pretrial and during the trial; tender available evidence; make appropriate arguments at trial; properly coordinate work among members of the defense team; obtain a treating psychiatrist for Defendant; make appropriate pretrial and mid-trial motions; conduct an adequate voir dire of prospective jurors; seek an additional competency hearing prior to or during the trial; make an appropriate record of events occurring during the trial which Defendant contends would have been of assistance on appeal; seek a continuance of the trial; and file a direct appeal of all appropriate issues. All of these claimed failings have been addressed separately in different parts of the Application.

■ The Court first turns to the issue of alleged ineffective assistance of counsel in the pretrial investigation. In the instant § 2255 proceeding Defendant tendered and the Court admitted a large volume of declarations, documentary evidence and some live testimony which were calculated to show what was missed by trial defense counsel's investigation. An analysis of this evidence, which included credibility determinations and resolution of conflicting evidence, led to a finding that Defendant was not prejudiced by any of counsel's claimed failings. The Court finds that the evidence tendered by Defendant on this prong of the ineffective assistance claim is properly termed "substantial" for purposes of appealability if accepted at face value without evaluating it for credibility or in the context of other evidence in the case. However, because *Strickland* established a two pronged test, there is no need to issue a COA unless both prongs meet the certification standard.

With respect to the question whether trial counsel's investigation measured up to the required constitutional standard, the

habeas record contains considerable evidence showing what steps counsel took. This evidence is not disputed though it is voluminous.[4] Also, the pretrial and trial record reflects what evidence was introduced at those stages and which, obviously, was the product of counsel's investigation.

 Defendant also produced declarations at the habeas hearings which were critical of his trial counsel's performance generally. Three of these declarations are from defense trial counsel themselves. Another declaration, Def. Ex. 29, March 18, 2002 habeas hearing, is that of Richard Burr, an attorney who specializes in representation of defendants in capital cases. The bottom line on Burr's declaration is "Counsel's performance in this case fell below the standard set by *Strickland* and ... but for counsel's failure, there is a reasonable probability that Mr. Battle would not have been sentenced to death." Def. Ex. 29, ¶ 3. Burr's declaration was rejected by the Court in an order entered on May 6, 2002, which found that his declaration had failed to demonstrate sufficient familiarity with the overall record in this case so as to permit him to express the offered opinion.

Trial counsel Kearns' declarations (which were admitted into evidence), Def. Ex. 50 and 51, March 18, 2002 habeas hearing, contain the following statements: "we never completed the investigation of Anthony's background"; "I failed to complete the inmate related investigation I intended to complete and which in my opinion was necessary to competent representation of Anthony Battle in this case"; "we should have sought a continuance of the trial date, but did not"; "at the time I did not appreciate how inadequately prepared we were to go to trial, in part because of my lack of experience in capital

cases, and in part because the defense team did not meet regularly or communicate enough"; "...it just never occurred to me to consider investigating the prison's possible role in the crime"; and in Kearns' supplemental declaration Def. Ex. 51, "our failure to investigate pesticide exposure was not a strategic decision but rather the result of the dysfunction in our defense team."

Martin's declaration, Def. Ex. 55, states in relevant part that "in retrospect, because of Stephanie's lack of capital case experience, I should have been more involved in the day to day direction of the fact investigation of the case. I should have known, given my experience with capital cases, that the division of labor which kept me out of the day to day investigation was a mistake.... My failure, as learned counsel, to oversee the mitigation and mental health investigation was not reasonable."

The Order denying Defendant's § 2255 motion sets out in detail the various aspects of trial counsel's investigation. This did not require reconciliation of conflicting evidence but only compilation of evidence in the habeas and trial record showing what mitigation, mental health and social history investigation counsel conducted. *See* Order at 32–37, 49–56 (describing trial testimony of Defendant's mental health experts and thus reflecting the result of their investigation), and 95–107 (describing defense counsel's investigation). In the Court's opinion, the investigation described in the order speaks for itself. By any objective measure, this investigation was well above the standard required of reasonably competent counsel under *Strickland v. Washington.* Counsel's investigation focused on seeking evidence of insanity in relation to the guilt-innocence

---

4. The habeas record does not purport to contain evidence of all investigatory activity by counsel. It focuses on the investigation of Defendant's mental health and social history.

phase and on Defendant's mental condition and difficult childhood at the penalty stage. These were reasonable choices. That trial counsel have expressed vague and subjective opinions that their investigation was insufficient in certain respects or that it never occurred to them to investigate certain areas or that they were disorganized is entitled to little weight. Objectively speaking, the quality and breadth of the investigation conducted by trial counsel in this case so easily satisfies the *Strickland* test that it cannot be said that it would be debatable among jurists of reason whether Defendant's counsel conducted a competent investigation. Accordingly, the Court declines to issue a COA on Defendant Battle's claim that trial counsel failed to conduct a competent investigation.

While Defendant's contention that his trial counsel failed to "present a meaningful mental health case in mitigation" primarily is based on a claim that counsel conducted an incompetent pretrial investigation and thus did not present certain evidence to the jury, this contention is also based on counsel's alleged incompetent failure to share evidence in their possession with the defense's expert mental health witnesses. This issue is discussed in the Court's April 30 Order. Order at 146–163. These claimed failures of counsel either were not proven to have occurred, or were not shown to represent unreasonable judgment, or did not prejudice Defendant. They did not deprive Defendant of a meaningful mental health case in mitigation as contended in Battle's Application.[5] Application at 9–12. Substantial evidence was not tendered in support of these claims. They also lack legal substance. No COA should issue.

Defendant next contends that his trial counsel failed to perform "as reasonably competent counsel in cases involving mental health issues and government evaluation of Defendant." Application at 14. Under this rubric, Defendant argues that counsel incompetently allowed Dr. Dave Davis, a psychiatrist hired by the defense, to examine him without first obtaining Defendant's complete social history via an investigation; that counsel incompetently failed to object to the Court's orders which allowed Defendant Battle to be evaluated at FCI Butner for a period of 75 days; and that counsel were ineffective in failing to ensure that their mental health experts performed a full neurological exam. The April 30 Order examined each of these issues and found there was no factual showing of incompetence or resulting prejudice. *See* Order at 164, 165, 167. These claims are frivolous and do not warrant the issuance of a COA, either singly or in combination.

Next, Defendant claims that his counsel were incompetent for failing to retain a treating psychiatrist for him who would attempt to medicate Defendant during the trial. Application at 15. This issue is also discussed in the April 30 Order and the Court found that there was no evidence to support this claim. Order at 171–176. Accordingly, no COA is warranted.

■ Defendant Battle further contends that counsel incompetently failed to "reasonably and competently present evidence of the ability of the BOP to safely incarcerate petitioner." Application at 15. The

---

**5.** By any stretch of the imagination, Defendant's mental health evidence was "meaningful" and, more to the point, up to constitutional standards. Defendant called expert witnesses who opined in detailed and lengthy testimony that he suffers from paranoid schizophrenia and that he was psychotic at the time he killed Officer Washington. The fact that the jury did not accept their testimony does not mean that counsel did not do a competent job.

Court found that trial counsel were not incompetent for failing to present the evidence described by Defendant, including evidence concerning the conditions of Defendant's confinement at the Atlanta Pretrial Detention Center during the trial and the conditions of confinement for a witness in a previous case handled by Stephanie Kearns. Order at 191–195. This individual is serving a life sentence in a specially constructed cell. The Court's resolution assumed the correctness of the facts presented by Defendant but found that no incompetence had been shown. This issue does not warrant a COA.[6]

Next, Defendant seeks a COA with respect to his argument that his counsel were incompetent because they failed to present evidence that the Bureau of Prisons had failed to recognize that he was seriously mentally ill and that it did not properly incarcerate him. Application at 16. The Court found after a discussion of this issue, Order at 197–199, that counsel were not incompetent in this regard. This finding did not require reconciliation of conflicting evidence. No COA is warranted.

Defendant further separately argues that his counsel were ineffective for failing to call Dr. Rogers, a psychologist and author of a test for malingering, to testify during the defense case in chief in the guilt-innocence phase. Dr. Rogers did testify as a defense witness during the sentencing phase. The Court found in the April 30 Order that Defendant was not prejudiced by the failure of Dr. Rogers to testify at the guilt-innocence phase of the trial instead of at the sentencing phase. Order at 201–202. In addition, this argument was rejected on direct appeal. *United ed States v. Battle*, 173 F.3d 1343, 1345 n. 2 (11th Cir.1999), *cert. denied*, 529 U.S. 1022, 120 S.Ct. 1428, 146 L.Ed.2d 318 (2000).

No COA should issue on this aspect of the case.

Defendant next seeks a COA on the issue of whether his trial counsel failed to adequately investigate his 1987 murder conviction and seek to set it aside or offer mitigating evidence about it before the 1997 jury in the instant case. Application at 17. This issue was discussed in the Court's Order at 202–204. The Court concluded that there had been no showing that trial counsel's performance was below the standard of reasonably competent counsel in this regard and that no prejudice had been shown. No COA should be granted on this issue.

### D. Other Pretrial Errors

In the next major subsection of his Application pertaining to claimed ineffective assistance of counsel, Defendant asserts that a COA should issue as to "other pretrial errors" of counsel which are described in three numbered paragraphs. *See* Application at 18. Each of these three claims was discussed in the April 30 Order at pages 169–171 ("Exclusion of Robert Willis' testimony"); 179–180 ("Daubert hearing"); and 205–208 ("Exclusion of Donovan testimony") respectively. No COA is warranted on any of these issues.

### E. Juror Misconduct

██ Under this subheading, Defendant seeks a COA on the issue whether he was denied a fair trial based on his claim that jurors slept "through critical portions of the trial" and that the Court did not conduct a hearing on this matter. Application at 19. In its April 30 Order the Court found the evidence insufficient and denied relief. Order at 212–16. A COA is not warranted on the claim that sleeping ju-

---

**6.** In closing argument, defense counsel Martin did argue that Defendant could be safely

incarcerated and that this was a better option that the death penalty. *See* 4590–4617.

rors denied Defendant due process. The evidence on this issue was slight, not substantial. Also, the issue of whether the Court should have conducted a hearing does not merit a COA. The trial judge was present and was able to observe the jurors and, therefore, a hearing was not necessary.

Defendant next argues that the alleged presence of alternate jurors during deliberations in the guilt phase is an issue as to which a COA should issue. While declarations of two of the alternate jurors stating that they participated in jury deliberations during the guilt-innocence phase were admitted into evidence at the habeas hearing, the trial record is totally clear that they did not. Rather, they participated and deliberated at the sentencing stage after replacing members of the regular panel. *See* Order at 218–221. Despite the declarations of the two jurors, the Court finds that the clarity of the record compels a conclusion that this issue is frivolous. Accordingly, no COA will issue.

F. Other Trial Errors

■ In this part of his Application, Defendant first seeks a COA claiming that the voir dire was constitutionally inadequate and resulted in errors that prejudiced him. This issue is discussed at pages 184–186 of the Order and also in *United States v. Battle*, 235 F.Supp.2d 1301, 1345–46 (N.D.Ga.2001). Also, to the extent that Defendant refers to voir dire concerning juror attitudes about the death penalty, this claim was rejected on direct appeal. *See Battle*, 173 F.3d at 1345 n. 2. The Court concluded that there was no showing of ineffective assistance of counsel on voir dire and constitutional standards were met. No COA should issue on this argument.

■ Defendant next seeks a COA on the issue whether he was denied the effective assistance of counsel because his at-

torneys failed to request time for him to change clothes after the Court insisted he remain in Court, or make a timely motion for mistrial when he appeared before the jury panel in prison garb and shackles. This claim was rejected in the Order at 186–187. It was also rejected on direct appeal in *United States v. Battle*, 173 F.3d 1343, 1345 at n. 2. It is not appropriate for a COA to issue.

Defendant Battle further seeks a COA on the claim that his counsel were ineffective for failing to seek a continuance after BOP correctional officers testified that the death penalty would deter prisoners already serving a life sentence from killing a guard. This claim was not separately addressed in the April 30 Order though the Court did rule that all claimed errors of counsel did not in the aggregate cause a failure to fundamental fairness at the trial. Order at 254. No evidence was tendered at the § 2255 hearings to show what evidence might have been proffered had a continuance been sought and granted. No COA will issue.

■ Defendant next seeks a COA on the question whether an evidentiary ruling made during the course of the trial deprived Defendant of his constitutional right to present penalty phase testimony. This issue is discussed at pages 222–225 of the Order. The Court found that limiting the testimony of witness Vogelsang did not render the sentencing process fundamentally unfair, that Vogelsang gave extensive testimony, and that Defendant had not shown what testimony Vogelsang was prepared to give which she was not able to give. It is unnecessary for a COA to issue on this matter.

■ Next, at page 23 of his Application, Defendant seeks a COA on the issue whether the Court erred in not discharging alternate jurors when members of the regular panel retired to deliberate at the

end of the guilt phase. The Court has earlier ruled, *United States v. Battle,* 235 F.Supp.2d 1301, 1348 (N.D.Ga.2001), that although Rule 24(c), Fed.R.Crim.P., as it existed in 1997 required that alternate jurors be discharged when the jury retires to deliberate, that particularly given the bifurcated procedure established by the Federal Death Penalty Act, it was not error for the Court to maintain the alternates in a standby status in case they were needed in any subsequent sentencing proceeding. The alternate jurors were allowed to leave the courthouse and were instructed not to discuss the case so that if they were needed later they would be able to participate. Two of the alternates subsequently did become members of the regular panel at the penalty phase. Because of former Rule 24(c)'s explicit language, a COA is issued.

Defendant next seeks a COA on his argument that the Court violated his right to a fair trial by discharging jurors Craft and Tooley during the trial. Application at 23. In addition, Defendant argues that the Court's refusal to allow juror Craft to remain and watch the trial after she was dismissed as a juror denied his right to a public trial. Application at 23. These issues were discussed in the Court's April 30 Order at 225–229. Neither of these issues warrant a COA.

Next Defendant seeks a COA on the issue whether the trial court erred in failing to instruct the jury on the consequences of a not guilty by reason of insanity verdict. Application at 24. At trial counsel tendered a proposed instruction in this regard but the Court did not give it because it was defective. This issue is discussed in the Order at 229–232. No COA is warranted on this issue.

 Defendant Battle next seeks a COA on the question whether his trial counsel were ineffective for failing to request the Court to instruct the jury at the end of the guilt phase. The Court has sentencing phase that unadjudicated criminal conduct must be proven, element by element, beyond a reasonable doubt. Application at 24. In denying this claim, the Court found that *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), did not apply. Because *Apprendi* does not clearly support Defendant's position, and in any event is not retroactive, no COA will issue.

Defendant next seeks a COA on the issue whether his trial counsel were ineffective for failing to seek a jury instruction from the Court that Defendant was serving a paroleable sentence. Application at 25. Defendant's habeas counsel did not state what instruction should have been given. This issue is frivolous and Defendant's request for a COA is denied.

 At page 25 of his Application, Defendant Battle asks for a COA as to his claim that there was insufficient evidence of the "heinous cruel and depraved" aggravating circumstances in this case. This was discussed and rejected at pages 232–233 of the Order. Also, this argument was rejected on direct appeal. *See Battle,* 173 F.3d at 1345, n. 2. A COA will not issue on this argument.

### G. Competency Related Claims

In his Application at pages 26–27, Defendant seeks the issuance of a COA on several different arguments: (1) the magistrate judge lacked jurisdiction to preside over the competency hearing; (2) that counsel were ineffective for failing to testify at Defendant's competency hearing; and (3) that counsel were ineffective for failing to seek a further competency evaluation of Defendant. These issues are discussed, respectively, at pages 28–30, 176–179, and 77–78. None of these issues warrants a COA.

■ In addition, Defendant argues that he was incompetent during the trial and seeks a COA. This issue is discussed at pages 31–74 of the Order. The substantive competency claim required evaluation of a large body of factual material including the results of cognitive and neuropsychological tests and a determination by the Court that the testimony of certain mental health experts was entitled to greater weight than that of others. A COA is granted on this issue. The fact that Defendant did not revisit this argument on direct appeal does not bar this argument.

Defendant also seeks a COA to preserve his right to later argue that he is incompetent to be executed. As Defendant notes, this issue is not before the Court at this time. Thus, no COA is appropriate.

H. The Actions and Bias of the Trial Judge During Trial Deprived Petitioner of a Fair Trial and Reliable Sentencing Hearing

In this portion of his Application beginning at page 28, Defendant seeks a COA with respect to his contention that the trial court's rulings deprived him of a fair trial and reliable sentencing hearing; also, Defendant seeks a COA to allow appeal on the question whether the Court's rulings on motions and case management decisions during the § 2255 proceedings reflected bias and deprived him of fair post-conviction proceedings. Application at 28.

■ With respect to Defendant Battle's claim that the Court's rulings at trial and at the sentencing hearing deprived him of a fair trial and sentencing hearing, this issue is discussed at pages 234–235 of the April 30 Order and also in *United States v. Battle*, 235 F.Supp.2d 1301, 1339–50 (N.D.Ga.2001). To the extent that Defendant is claiming that the trial court's rulings were unfair, all of such rulings have been substantively addressed on the merits in the instant § 2255 proceedings

and rejected. No inference of bias may be drawn from such rulings. A COA is denied as to Defendant's contention that the trial court was biased against him. With respect to Defendant's claim that rulings of the Court in the § 2255 proceedings were biased and unfair, the final substantive rulings are appealable as allowed by this order or otherwise by the Court of Appeals. Rulings respecting the admission of evidence or the management of the § 2255 proceedings which are alleged to have been unfair or improper may be appealed without a COA.

I. Prosecutorial Misconduct

■ Defendant seeks a COA on the claim that government misconduct denied him a fair trial and penalty phase hearing through various actions. Application at 29. This claim has nine subparts and is discussed at pages 236–247 of the April 30 Order. All portions of the claim except for subpart (2) are frivolous. With respect to subpart (2), namely that BOP employees intimidated defense witnesses, a COA is granted because the Court was required to make credibility determinations in a mid-trial hearing and new evidence, an OIG Report, was admitted during the § 2255 hearing.

J. Conflict Issues

■ Defendant seeks a COA on the question whether a conflict of interest should have disqualified Drs. Sally Johnson, Chief Psychiatrist and Assistant Warden at FCI Butner, and Mark Hazlerigg, a psychologist at FCI Butner, from testifying as expert witnesses on account of the fact that they are employed by the government. Application at 31. Drs. Johnson and Hazelrigg were appointed by the Court to determine Defendant's competency to stand trial and also his sanity at the time of the offense. Trial defense counsel

did not object to their appointment. Also, Defendant contends that his trial counsel had a conflict of interest and thus should not have been allowed to represent him at the competency hearing or at trial. Defendant asserts counsel's conflict arose from the fact that they had knowledge of his lack of competency, and should have been available as witnesses to his deteriorating mental condition rather than as counsel.

Both of the foregoing claims were rejected by the Court in the Order at pages 247–250. A COA is not warranted on these issues.

### K. Issues Related to the Direct Appeal

■■■ Defendant seeks a COA on his claim that he was denied effective assistance of counsel on direct appeal because numerous alleged meritorious claims were omitted. All of the points which Defendant contends should have been raised in his appellate brief in the main appeal have been addressed as substantive claims elsewhere in this order and have been found to be non-meritorious. Thus, counsel's failure to include these claims in the main appeal was not ineffective. In so ruling, the Court is aware that in Defendant's Exhibit 51, Supplemental Declaration of Stephanie Kearns, Kearns states that she does not know why they did not include these items on appeal, that no strategic decision was involved, and that it simply did not occur to her to appeal these issues. No COA is warranted.

Defendant further claims that a COA should issue on the question whether the Court of Appeals violated his constitutional right to meaningful appellate review by considering and rejecting nine of his thirteen issues in a footnote. Application at 31–32. This argument was rejected in the Order at page 250. In his brief filed in support of his § 2255, Defendant did not further explain this claim. The Court finds this issue is frivolous and declines to grant a COA.

### L. Newly Discovered Evidence Exists Which Warrants a New Trial and/or Penalty Proceedings

■■■ Defendant seeks a COA with respect to the Court's refusal to grant a new trial based on newly discovered evidence. Application at 33. This matter is discussed at pages 250–253 of the Order. The only new evidence identified by Defendant is a report prepared by the Office of the Inspector General, which is not favorable to Defendant Battle's claim that misconduct occurred in the Marshal's lockup which adversely affected his right to a fair trial. The other matters mentioned do not constitute new evidence. No COA will issue.

### M. Issues Raised on Direct Appeal

Defendant requests a COA which will allow him to argue again errors raised on direct appeal. No explanation of this unusual request is provided. This request is frivolous and no COA will issue.

### N. Cumulative Effect of Errors

Defendant claims that collectively all of the errors of the Court and counsel in the trial undermine confidence in the outcome of the trial, particularly the reliability of the death sentence. Application at 33. Defendant has made some far ranging claims, particularly pertaining to his claim of ineffective assistance of counsel and alleged errors or bias of the trial Court, but the Court has considered these claims both individually and in the aggregate and found that Defendant failed to make a showing that he was deprived of effective counsel or that the Court was biased. Order at 254. The request for a COA is denied.

**O. The Death Penalty for Petitioner is Cruel and Unusual**

█ In this section of his Application at page 34, Defendant argues that his mental impairment makes the death penalty cruel and unusual. At trial, the Government contended (and thus admitted) that Defendant has a personality disorder. In its Order at pages 254–255, the Court noted that the jury had been fully informed of Defendant's impairment, and that the death penalty was not cruel and unusual under the circumstances of the offense. No COA will issue.

**P. Issues Related to 28 U.S.C. § 2255 Proceedings**

In his Application at 34–36, Defendant complains of this Court's limitation of discovery in the § 2255 proceedings, and of this Court's refusal to randomly assign the § 2255 motion to another judge. No COA is required.